Ronald **APPERSON**, Plaintiff,

v.

**AMPAD CORPORATION**, Defendant.

No. 86 C 1086.

United States District Court,
N.D. Illinois, E.D.

Aug. 21, 1986.

Ronald J. Clark, Chicago, Ill., for plaintiff.

Paul F. Donahue, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

Before the Court is defendant's motion under Rule 12(b)(6), Federal Rules of Civil Procedure, to dismiss four counts of plaintiff's six-count complaint for failure to state a claim upon which relief can be granted. For the reasons stated herein, defendant's motion is granted.

## I. FACTS

Plaintiff's claims arise out of his termination by his employer, defendant Ampad Corporation. Plaintiff Ronald Apperson, has been employed until recently at Huron Office Products, Inc. (HOP), a paper goods company, for approximately five years. In March 1985, under the terms of a written Acquisition Agreement, defendant Ampad

acquired HOP from the Port Huron Paper Corporation, which is owned by Pentair, Inc. In the Acquisition Agreement, there was a paragraph providing that Ampad would use its "best efforts" to retain four HOP executives including the plaintiff, who was then the manager of HOP's Litchfield, Kentucky plant. The Agreement also provided that if Ampad terminated plaintiff involuntarily within a three-year period, it would pay him one year's salary as severance pay. In addition, the agreement states: "[i]t is understood that [Ampad] anticipates negotiating employment agreements with said executives [including plaintiff] which shall contain terms and conditions in addition to the provisions set forth above."

In December 1985, defendant delivered to plaintiff a proposed employment agreement which he refused to sign. In addition to setting the terms of employment, the proposed agreement forbade plaintiff from working for a competing paper goods company upon leaving Ampad's employment. Plaintiff's employment ended sometime shortly after this incident under circumstances which are disputed and are not material to this motion. Plaintiff alleges a wrongful termination. Defendant counters that it was a voluntary termination. Plaintiff alleges he was earning an annual salary of $59,750 plus a twenty percent bonus of $11,950 at the time he was terminated and defendant has refused to tender that amount to plaintiff.

Plaintiff has filed a six-count complaint. Count I is based on breach of the Acquisition Agreement and asserts that the defendant is indebted to plaintiff for one year's salary, or $71,700. Count II is also based on breach of contract, alleging that, but for the termination, plaintiff could reasonably be expected to be employed for a reasonable length of time after the three-year period mentioned in the Agreement, as measured by the retirement age of personnel at Ampad. Plaintiff claims damages under Count II in the amount of $1,000,000.

Count III alleges that, by requiring plaintiff to sign the proposed employment agreement that precluded his re-employment in the paper goods industry, defendant attempted to place plaintiff in involuntary servitude in violation of the Thirteenth Amendment of the U.S. Constitution. Plaintiff claims damages of $1,000,000 for this count.

Count IV alleges that, at the time defendant entered into the Acquisition Agreement, it had no intention of complying with the condition regarding plaintiff's continued employment and thus committed fraud on the plaintiff in the amount of $1,000,000.

Count V alleges violation of the laws of the State of Minnesota, which makes it a criminal offense to refuse to pay employees amounts due under an employment agreement. Plaintiff claims $1,000,000 in compensatory damages under Count V.

Count VI alleges that defendant's actions were intentional and malicious and entitle plaintiff to punitive or exemplary damages in the amount of $1,000,000.

## II. DISCUSSION

For purposes of a Rule 12(b)(6) motion, all well-pleaded allegations of fact are deemed admitted with all questions of reasonable doubt resolved in favor of the pleader. *See Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969); *Burns v. Paddock,* 503 F.2d 18, 25 (7th Cir.1974). Dismissal is warranted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### A. *Count II*

Count II of plaintiff's complaint attempts to state a claim for breach of contract. The contract is an agreement for the sale of HOP, plaintiff's former employer, to defendant Ampad. The pertinent part of the Acquisition Agreement provides as follows:

Upon closing, Buyer [Ampad] shall, or shall cause HOP to, make its best efforts

to retain HOP executives David Cairns, John Loughran, Ronald Apperson and David Seagrave in responsible management positions in Buyer or HOP at not less than current levels of responsibility and compensation, including employee benefits for comparable managers. Upon involuntary termination of employment in such management position within three years after Closing Date, severence pay equal to one year's salary shall be payable promptly by HOP or Buyer to any of such four executives so affected. It is understood that Buyer anticipates negotiating employment agreements with said executives which shall contain terms and conditions in addition to the provisions set forth above.

Count II differs from Count I because Count I is only a claim for one year's salary and bonus, whereas Count II is a claim for $1,000,000, the amount plaintiff would earn had he been employed for a reasonable length of time measured by the retirement age of personnel at Ampad. Plaintiff contends that if Ampad had not breached its duty to use "best efforts" to employ him, it could reasonably be expected that plaintiff's employment would continue indefinitely beyond the three years.

Plaintiff has not alleged in his complaint any representations made by defendant, other than the provision in the Acquisition Agreement, that would give him reason to expect employment beyond three years. Therefore, the sole question for Count II is whether plaintiff could reasonably expect his term of employment to last beyond three years.

It is necessary at this point to determine which state's law applies to the interpretation and construction of the Acquisition Agreement. The contract contains a choice of law provision that provides: "It is the intention of the parties that the laws of the State of Minnesota shall govern the validity of this Agreement, the construction of its terms, and the interpretation of the rights and duties of the parties."

■ A court must apply to those claims based on diversity of citizenship the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Therefore, Illinois conflict of law principles will be used to determine whether the choice of law provision in the contract is to be given effect.

■ In Illinois, the law applicable to a contract is generally that which the parties intended. When that intent is expressed in a choice of law provision, it should be followed. *Hofeld v. Nationwide Life Insurance Co.*, 59 Ill.2d 522, 529, 322 N.E.2d 454, 458 (1975). Therefore, the choice of law provision will be given effect, and this court will apply Minnesota law to the construction and interpretation of the contract.

■ Plaintiff's claim in Count II amounts to a claim for life-time or permanent employment. Although plaintiff does not characterize it as such, this is the essence of Count II since plaintiff argues that defendant must use "best efforts" to retain plaintiff indefinitely, i.e., for the life of the plaintiff. This claim is not supported by a plain reading of the contract or by Minnesota law.

In case the parties to a contract of service expressly agree that the employment shall be "permanent," the law implies, not that the engagement shall be continuous or for any definite period, but that the term being indefinite the hiring is merely at will. *Skagerberg v. Blandin Paper Co.*, 197 Minn. 291, 294, 266 N.W. 872, 873–74 (1936). The contract is indefinite as to duration after the initial three-year period. Therefore, under Minnesota law, plaintiff's employment is terminable at will after three years, and he has no right to employment after that period, and consequently no right to any damages after the initial three-year period. Thus, Count II fails to state a claim upon which relief can be granted and must be dismissed.

### B. *Count III*

Plaintiff alleges in Count III that as a condition of plaintiff's continued employment with HOP, he would be required to sign an agreement that precluded his em-

ployment in competing paper goods companies upon leaving HOP. Plaintiff contends that that requirement constitutes a violation of the Thirteenth Amendment of the U.S. Constitution. Plaintiff, not surprisingly, cites no cases in support of this theory.

The Thirteenth Amendment states:

Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

U.S.C.A. Const.Amend. 13.

■ While the prohibitions of the Amendment have been extended beyond the literal terms "slavery" and "involuntary servitude" in the employment context, a claim under the Thirteenth Amendment cannot be sustained unless the plaintiff has no option to work elsewhere. *Tucker v. Harley Davidson Motor Co.*, 454 F.Supp. 738, 741 (E.D.Wis.1978) (citing *Pollock v. Williams*, 322 U.S. 4, 18, 64 S.Ct. 792, 799, 88 L.Ed. 1095 (1944)); *see also Flood v. Kuhn*, 443 F.2d 264 (2d Cir.1971), *aff'd*, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972). In *Flood v. Kuhn, supra*, the Second Circuit considered a Thirteenth Amendment challenge to professional baseball's reserve system whereby players are restricted to contract negotiations with the first team that "reserves" the player. The court rejected the claim because "plaintiff retains the option not to play baseball at all." 443 F.2d at 268. Similarly, the plaintiff in this case retains the right to pursue employment in other industries besides paper goods. Therefore, the plaintiff has failed to state a claim under the Thirteenth Amendment, and Count III is dismissed.

### C. *Count IV*

■ In Count IV, plaintiff alleges in his complaint that the defendant "knew when it entered into the agreement that it had no intention of complying with that agreement as to plaintiff," and that the defendant "deliberately set out on a course of conduct designed and intended to defraud plaintiff of his right to employment and his rights under the agreement." These bare allegations are inadequate to withstand a motion to dismiss.

Fed.R.Civ.P. 9(b) provides that allegations of fraud must be stated with particularity. Plaintiff has not alleged facts sufficient to support the essential elements of fraud with any degree of particularity. The complaint fails to provide any detail as to the time or place of the purported representations. *See Smith v. Central Soya of Athens, Inc.*, 604 F.Supp. 518 (E.D.N.C. 1985). Although the alleged representations exist in this case in written form, there are no facts pleaded that describe how, where or when defendant made the representations that appeared in the Acquisition Agreement to the plaintiff. Nor has plaintiff specifically alleged that he relied on the representation. Therefore, plaintiff has not satisfied the requirements of Rule 9(b) and defendant's motion to dismiss Count IV must be granted.

### D. *Count V*

■ In Count V, plaintiff contends that, since the contract between defendant and the predecessor company is expressly governed by the laws of the state of Minnesota, defendant is subject to the criminal statutes of Minnesota with respect to the employment relationship. Plaintiff alleges that the failure to pay the sums due under the Acquisition Agreement constitutes a violation of Minn.St. 181.74, which provides in pertinent part:

Any employer required under the provisions of an agreement to which he is a party to pay or provide benefits or wage supplements to employees ... and who refuses to pay the amount or amounts necessary to provide such benefits or furnish such supplements within 60 days after such payments are required to be made under law or under agreement, is guilty of a gross misdemeanor. If such employer is a corporation, any officer who intentionally violates the provisions of this section shall be guilty of a gross misdemeanor.

M.S.A. § 181.74 (1985 Supp.)

Plaintiff's argument is misguided. The choice of law clause in the Agreement gov-

**752**

erns exactly what it purports to: "the validity of this Agreement, the construction of its terms, and the interpretation of the rights and duties of the parties." As shown in the discussion of Count II, choice of law provisions in contracts are generally given effect in Illinois. *Hofeld v. Nationwide Life Insurance Co.*, 59 Ill.2d 522, 322 N.E.2d 454 (1975). However, "parties' specific intention concerning what law will control their agreements is binding on courts only where there is a logical basis for applying such law." *National Union Fire Ins. Co. of Pittsburgh, Pa. v. D & L Const. Co.*, 353 F.2d 169, 172 (8th Cir.1965), *cert. denied*, 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 539 (1966). For Count V, there is no logical basis for applying Minnesota law. The plaintiff, a Kentucky resident, works in Kentucky for a Massachusetts corporation. The supervisor that allegedly terminated plaintiff works in Illinois. The only connection the employment relationship has with Minnesota is the choice of law clause in the Acquisition Agreement for the sale of the predecessor company. Therefore, the choice of law clause is limited in its applicability to the construction and interpretation of the terms of the agreement. Minnesota criminal law is not applicable to defendant's conduct, which has no contact with Minnesota. Accordingly, Count V must be dismissed.

### III. CONCLUSION

For the reasons stated above, Counts II, III, IV, and V of plaintiff's complaint fail to state a claim upon which relief can be granted. Therefore, defendant's motion to dismiss those Counts is granted.

IT IS SO ORDERED.